# NO. 24-1626

In The

# United States Court Of Appeals
## For The Fourth Circuit

## FRONT ROW MOTORSPORTS, INC.;
## ROBERT A. JENKINS,

*Plaintiffs - Appellees,*

v.

## MICHAEL DISEVERIA; RONALD C. DEVINE,

*Defendants - Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE

———————

## REPLY BRIEF OF APPELLANTS

———————

**Anthony Roelof Coppola**
**Patrick Robert Corish**
**CHAP PETERSEN & ASSOCIATES, PLC**
**3970 Chain Bridge Road**
**Fairfax, Virginia 22030**
**(571) 296-0549**

**Trevor Reid**
**Meredith L. Yoder**
**PARKER, POLLARD, WILTON & PEADON, PC**
**6802 Paragon Place, Suite 205**
**Richmond, Virginia 23230**
**(804) 262-3600**

*Counsel for Appellants*

*Counsel for Appellants*

# Table of Contents

**Page:**

Table of Authorities ................................................................. iii

Summary of the Argument ......................................................1

Argument ...............................................................................3

      Jenkins and Front Row's Statement of the Issues did not mention Devine and DiSeveria's third issue; thus, the issue is waived...............3

I.    The Indemnity Agreement was not a valid or enforceable contract...............................................................................4

    A.    Front Row and Jenkins failed to oppose the argument that the District Court used the wrong test .........................4

    B.    The Indemnity Agreement lacks consideration .................5

    C.    The Indemnity agreement is not a valid contract because it was not signed by either Wayne Press or Robert Jenkins.........................................................................8

        1.    The amount of risk to Devine and DiSeveria was fundamentally different without Wayne Press's signature.............................................................8

        2.    There are no reciprocal promises without Jenkins or Front Row's signatures ...........................11

    D.    Public Policy forbids the Indemnity Agreement because it indemnifies a crime .............................................12

        1.    The record shows the Indemnity Agreement indemnified the civil liability for the crime of business conspiracy .....................................................12

2.     The law does not allow a contract indemnifying a crime or an intentional tort ............13

II.   The District Court applied the wrong test of the reasonableness of settlement and failed to consider the likelihood of success of the suit........................................................15

A.   The Trial Court chose not to review the merits of the Virginia case by treating it as "re-litigation." ....................16

B.   The Settlement Agreement was unreasonable because it did not consider the risk of exposure ..............19

C.   The District Court struck the wrong balance of incentive to settle and the right of Devine and DiSeveria to have their day in court....................................22

███████████████████████████████████████
███████████████████████████████ .............................24

Conclusion.....................................................................................28

Certificate Of Compliance....................................................................29

Certificate of Filing and Service .........................................................30

# Table of Authorities

**Page(s)**:

**Cases:**

*Arnold v. Amoco Oil Co.*,
　872 F. Supp. 1493 (W.D. Va. 1995) ............................................................11

*Bank of Am. Merch. Servs., LLC. v. Arby's Rest. Grp. Inc.*,
　2021 NCBC LEXIS 61 (Mecklenburg Supr. Ct. June 30, 2021)........15, 16

*Baturin v. Comm'r of Internal Revenue*,
　31 F.4th 170 (4th Cir. 2022) ........................................................................16

*Dillon v. Anderson*,
　43 N.Y. 231 (1870)........................................................................................9

*Equal Rights Ctr. v. Niles Bolton Assocs.*,
　602 F.3d 597 (4th Cir. 2010)........................................................................4

*Fid. & Cas. Co. v. Charles W. Angle, Inc.*,
　243 N.C. 570, 91 S.E.2d 575 (1956) ...........................................................11

*Graham v. James F. Jackson Associates, Inc.*,
　84 N.C. App. 427, 352 S.E.2d 878 (1987) ...................................................13

*Hilliard v. Thompson*,
　81 N.C. App. 404, 344 S.E.2d 589 (1986) ...............................................9, 11

*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*,
　896 F.2d 54 (3d Cir. 1990)...........................................................................7

*In re Orexigen Therapeutics, Inc.*,
　990 F.3d 748 (3d Cir. 2021)..........................................................................7

*In re Startec Global Commc'ns Corp., et al.*,
　300 B.R. 244 (D. Md. 2003) .........................................................................4

*K4C6R, LLC v. Elmore,*
    265 N.C. App. 204, 828 S.E.2d 677 (2019) ................................................10

*Kirkpatrick & Associates Inc., v. Wickles Corp.,*
    53 N.C. App. 306, 280 S.E.2d 632 (1981) ................................................21

*Lewis v. Dunn Leasing Corp.,*
    36 N.C. App. 556, 244 S.E.2d 706 (1978) ................................................14

*Live Oak Banking Co. v. Mafic United States LLC,*
    2024 NCBC LEXIS 3 (2024) ........................................................................10

*Moses-Ecco. Co. v. Board of Transp.,*
    320 F.2d 685, 115 U.S. App. D.C. 360 (D.C. Cir. 1963) ...........................18

*Pa. Nat'l Mut. Cas. Ins. Co. v. Associated Scafforders & Equip. Co.,*
    157 N.C. App. 555, 579 S.E.2d 404 (N.C. App. 2003) .............................18

*Poor v. Hill,*
    138 N.C. App. 19, 530 S.E.2d 838 (2000) ................................................10

*Shaw v. Foreman,*
    59 F.4th 121 (4th Cir. 2023) ......................................................................23

*Skinner v. Haugseth,*
    426 So. 2d 1127 (Fla. App. 1983)...........................................................9, 10

*Sprint Nextel Corp. v. Wireless Buybacks Holdings,*
    938 F.3d 113 (4th Cir. 2019)........................................................................6

*State v. Joyer,*
    284 N.C. App. 681 (2022)...........................................................................22

*Thompson v. Soles,*
    42 N.C. App. 462 (1979)...............................................................................6

*United States v. Dillard,*
    891 F.3d 151 (4th Cir. 2018).......................................................................17

*United States v. Ebert,*
    61 F.4th 394 (4th Cir. 2023) ...................................................................4

*United States v. Jones,*
    308 F.3d 425 (4th Cir. 2002)...................................................................4

*Valloric v. Dravo Corp.,*
    178 W. Va. 14, 178 S.E.2d 207 (1987) ...............................15, 16, 18

*Verisign, Inc. v. XYZ.COM LLC,*
    891 F.3d 481 (4th Cir. 2018).......................................................5

*Williams v. Morgan State Univ.,*
    No. 21-1918, 2023 U.S. App. LEXIS 26466 (4th Cir. Oct. 5, 2023).........13

**Statutes:**

U.C.C. § 9-408.................................................................25, 26, 27

U.C.C. § 9-408(d) ...................................................................27

Va. Code § 8.9A-203 ...............................................................27

Va. Code § 8.9A-203(b) ...........................................................27

Va. Code § 8.9A-408(d) ...........................................................28

**Constitutional Provisions:**

U.S. Const. amend. XIV ...........................................................23

**Rules:**

Fed. R. App. P. 28(b) ...............................................................3

# Summary of the Argument

As an introductory matter, Jenkins and Front Row waived some of their arguments. They did not respond to the third issue in Devine and DiSeveria's brief. Thus, opposition to that argument is waived.

Similarly, Jenkins and Front Row did not respond to Devine and DiSeveria's first argument that the District Court failed to apply the correct test. Thus, that opposition is waived. The District Court performed the test for breach of contract but never considered whether there was a valid contract in the first place.

The Indemnity Agreement at issue here is not supported by consideration. There are no mutual promises because Jenkins never signed the agreement. Setoff rights were only mentioned in the recitals section of the contract and are not binding. And DiSeveria sold his interest in BK Racing before payment was made to the company. He also lacks setoff because of his lack of ownership.

Wayne Press, an owner of BK Racing and individual of significant means, did not sign the Indemnity Agreement. His lack of signature

1

materially changes the risk Devine and DiSeveria took by signing.  Without his signature, the Indemnity Agreement is incomplete and unenforceable.

The District Court erred in its analysis of whether the settlement amount was reasonable.  It did not consider the risk of loss, only the dollar amount.  The District Court did not want to re-litigate the Virginia Matter being indemnified.  But in doing so, the Court went too far and failed to consider how likely the Plaintiffs were to prevail in the Virginia Matter.

# Argument

**Jenkins and Front Row's Statement of the Issues did not mention Devine and DiSeveria's third issue; thus, the issue is waived.**

As an introductory matter, Jenkins and Front Row waived their opposition to Devine and DiSeveria's third issue. Appellants' Opening Brief contained three issues on review. The third issue was: "Whether the District Court erred in finding in not considering whether the lien ostensibly placed on the NASCAR Charter in light of the Court's finding there was a significant risk of loss to Front Row Motorsports, Inc. and Robert Jenkins."

The Federal Rules of Appellate Procedure allow for an Appellee to write their own statement of issues if they are dissatisfied with the Appellants' statement. Fed. R. App. P. 28(b). Here the Appellees have opted to state their own issues. See Appellees' Br. at 4.

Jenkins and Front Row only listed two of the issues in their Statement of Issues. And their argument only contains two sections. Some of the content of Appellants' third brief section was responded to in section two of Appellees' Brief. But issue preservation is done in the Issues section of the brief. Not responding to the third issue waives opposition to the arguments.

3

*See In re Startec Global Commc'ns Corp., et al.*, 300 B.R. 244, 249 (D. Md. 2003) ("When an appealing party fails to raise an issue in its statement, the issue may be deemed waived, at the district court's discretion and if not inferable from those issues properly raised.").  Here the issue is not listed.  Thus, it is conceded.

## I.    The Indemnity Agreement was not a valid or enforceable contract.

### A.    Front Row and Jenkins failed to oppose the argument that the District Court used the wrong test.

Devine and DiSeveria's first argument on appeal contended that the District Court performed the test for breach of contract but failed to perform the test for whether the contract was valid.  Opening Br. at 17-18.  Front Row and Jenkins did not address this point at all in their Response Brief.  An argument not raised in an Opening Brief is deemed waived.  *See United States v. Ebert*, 61 F.4th 394, 402 (4th Cir. 2023). *See also Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 604 n.4 (4th Cir. 2010) (*Citing United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002) (holding that an argument not raised in the opening brief is waived)).  Similarly, an argument not responded to in the Response Brief also is waived.

Failing to apply the correct test is *per se* reversible error.  *See Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 484-86 (4th Cir. 2018) (holding that district court abuses its discretion when it applies the wrong legal test).  And the District Court should be reversed accordingly.

**B.      The Indemnity Agreement lacks consideration.**

Jenkins and Front Row argue the Indemnity Agreement is supported by consideration because it "contains reciprocal promises." Appellees' Br. at 28.  Jenkins and Front Row, however, did not sign the Indemnity agreement, so there is no reciprocal promise.

Just a few pages later, Appellees contradict themselves stating, "Jenkins and Front Row accepted the Indemnity Agreement by issuing Payment #2 and forgoing their Set Off rights after Devine and DiSeveria delivered the signed agreement." Appellee's Br. at 36.

Any potential setoff only is mentioned in the recitals section of the Indemnity Agreement.  JA2149.  "In consideration of the premises and other good and valuable consideration, the receipt of and sufficiency of which are hereby acknowledged, and in order to induce the Indemnitee to forego [sic]

its Right of set-off of section 7 of the Purchase Agreement, Indemnitors and

Indemnitees hereby agree as follows: …" JA31, JA2149.

Generally, recitals are not binding in a contract. *Thompson v. Soles*, 42

N.C. App. 462, 464 (1979). "Contracts often contain recitals: provisions that

do not make binding promises but merely recite background information

about factual context or the parties' intentions." *Sprint Nextel Corp. v. Wireless*

*Buybacks Holdings*, 938 F.3d 113, 127 (4th Cir. 2019).

If the recitals were binding, there is language in the recitals limiting

the indemnity to a judgment against Race Engines Plus:

> Whereas, after the Closing Date of December 9, 2016,
> Indemnitees discovered, contrary to section 4 of the Purchase
> Agreement, the existence of certain financing statements
> (Uniform Commercial Code Form UCC-l) filed by certain parties
> and the existence of a certain judgment award "the Judgment")
> against BK Racing, LLC in favor of Race Engine Plus et al.
> entered by the General Court of Justice - Superior Court Division
> of Cabarrus County, North Carolina (Cose [sic.] Number 14 CVS
> 3618). JA2149.

If the recitals are binding, this recital should limit liability to debts to Race

Engines Plus, and any indebtedness to the Bank would not be covered by the

Indemnity Agreement.

Moreover, the Indemnity Agreement listed Wayne Press in the recitals section just like the setoff.  JA2149. Either the recitals are binding and having Wayne Press sign is an essential term or the recitals are not binding, and the setoff is not consideration.  Appellees cannot have it both ways.

As it relates specifically to DiSeveria, there is no consideration because he was not an owner of BK Racing at the time of the second payment.  The payment was made to the company which DiSeveria did not own.  And any setoff also would belong to the company.  With no ownership, DiSeveria had no consideration.

Any setoff by DiSeveria would be triangular and invalid. "Thus, we and our sister circuits have indicated that triangular setoffs — in which party A owes party B who next owes party C who then owes party A — are definitionally not mutual." *In re Orexigen Therapeutics, Inc.*, 990 F.3d 748, 754 (3d Cir. 2021) (*Citing In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 59 (3d Cir. 1990)).

Appellees attempt to get around DiSeveria's lack of ownership by citing a loan by DiSeveria to BK Racing.  Appellees' Br. at 32.  But for a

company's consideration to count against an individual, they need equity in the company. Debt is not sufficient because there is no ownership.

### C. The Indemnity agreement is not a valid contract because it was not signed by either Wayne Press or Robert Jenkins.

In Robert Jenkins and Front Row's brief, they argue reciprocal promises were made as consideration. Appellee's Br. at 28. But without Press's and Jenkins's signatures, there are no reciprocal promises.

#### 1. The amount of risk to Devine and DiSeveria was fundamentally different without Wayne Press's signature.

Appellees argue Wayne Press's signature was not necessary because BK Racing's counsel asked to exclude Press's signature. Appellee's Br. at 26-27. This is parol evidence and is excluded by the Merger Clause in the Indemnity Agreement. JA2153.

> Final Agreement. This Indemnity represents the final agreement between Indemnitees and Indemnitors and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements. Indemnitors covenant and agrees [sic] that there are no unwritten oral agreements between [the parties] and all prior or contemporaneous agreements, understandings, representations and statements, oral or written, are merged into this Indemnity…. JA2153.

8

Appellees argue the section of the Indemnity Agreement that lists Press as a party is not valid on its own. Appellees' Br. at 33-34. They argue a signature being necessary must be specifically stated in a contract to be valid. *Id*.

This is not the law in North Carolina or the 4th Circuit. Appellees cite a variety of law from other jurisdictions. The main case from North Carolina that they cite is a concurrence. And Appellees miss the point. *Id.* The concurrence specifically states there is no North Carolina law requiring an affirmative statement to make a party's signature mandatory. *Hilliard v. Thompson*, 81 N.C. App. 404, 408, 344 S.E.2d 589, 591 (1986) (Whichard, J., concurring)("I find no North Carolina authority directly on point.").

The primary case that Appellees rely on is *Dillon*, a New York Case from 1870. Appellees' Br. at 33-35. The case pre-dates the UCC by nearly 90 years. The precedent they cite is 15 decades old and from another jurisdiction. It is hard to believe that if the law is, as they say it is, there is no more recent or precedential case.

Similarly, Appellees argue partial signature shifts the burden of proof to the Defendants-Appellants. For this burden shift, Appellees cite *Skinner*,

9

a 40-year-old Florida case.  They state, "Defendants bore the burden to 'prove by parol evidence that when he signed the contract he made it known to the other parties who now seek to sustain the contract that he only intended to be bound if all parties signed it.'" *Id*. at 34, *Skinner v. Haugseth*, 426 So. 2d 1127, 1131 (Fla. App. 1983).

This is not the law in North Carolina.  "In North Carolina, the party seeking relief for a breach of contract bears the burden of proving by a preponderance of the evidence that a valid contract existed and that the opposing party breached that contract." *Live Oak Banking Co. v. Mafic United States LLC*, 2024 NCBC LEXIS 3, *3 (citing *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838 (2000)).

There is no binding precedent stating a contract is valid even if it is only partially executed.  And the burden shift may have been appropriate in Florida 40 years ago, but it is not the law in North Carolina.

Instead, North Carolina follows the mirror image rule.  *K4C6R, LLC v. Elmore*, 265 N.C. App. 204, 214, 828 S.E.2d 677, 684 (2019) ("I conclude that a right-holder must match all of the terms of the third-party offer, applying a

'mirror image' rule...").  "The acceptance of the offer must correspond exactly to the terms of the offer, and if it does not, the purported acceptance is a rejection[.]" *Arnold v. Amoco Oil Co.*, 872 F. Supp. 1493, 1502 (W.D. Va. 1995).

### 2.    There are no reciprocal promises without Jenkins or Front Row's signatures.

Front Row and Jenkins contend the Indemnity Agreement is supported by consideration because it "contains reciprocal promises." Appellee's Br. at 28.  But Jenkins did not make a promise.  His signature is notably lacking from the Indemnity Agreement.  Front Row and Jenkins cite a North Carolina case from 1956 for the proposition that the indemnified party's signature is not required.  *Id*. at 35-36; *Fid. & Cas. Co. v. Charles W. Angle, Inc.*, 243 N.C. 570, 576, 91 S.E.2d 575, 579 (1956).

Judge Whichard's concurrence is relevant again as there is no modern law on point.  *See Hilliard*, 81 N.C. App. at 408, 344 S.E.2d at 591 (Whichard, J., concurring).

### D. Public Policy forbids the Indemnity Agreement because it indemnifies a crime.

#### 1. The record shows the Indemnity Agreement indemnified the civil liability for the crime of business conspiracy.

Jenkins and Front Row appear to be of two minds about the issue of whether the Indemnity Agreement indemnifies a crime. "This argument [that public policy forbids the indemnification of a crime], however, is not supported by a shred of record evidence and is nothing more than pure conjecture that ignores undisputed facts." Appellees' Br. at 37.

 (emphasis added). The Indemnity Agreement did as a factual matter indemnify a crime. Business Conspiracy was alleged, and the claim was paid.

### 2. The law does not allow a contract indemnifying a crime or an intentional tort.

Jenkins and Front Row's argue public policy does not void the Indemnification of a crime. They argue the Virginia Business Conspiracy claim is a tort claim. But it is not; it is a statutory claim. A statutory claim is not the same as a tort claim. *See Williams v. Morgan State Univ.*, No. 21-1918, 2023 U.S. App. LEXIS 26466, at *3 (4th Cir. Oct. 5, 2023).

Instead of citing to law, the Appellees stated, "Plaintiffs are unaware of any authority that suggests that the mere presence of tort-based claims in an otherwise routine action to determine the rights in and to property would foreclose Plaintiffs' ability to seek indemnity." Appellees' Br. at 40.

Appellees try to call into question the law on which Devine and DiSeveria rely. But they merely highlight Devine and DiSeveria's point.

Appellees state, "None of the cases cited by Defendants support their argument. Defendants' citation to *Graham* (Br. at 38) does nothing more than reiterate the general rule '**prohibiting insurance against liability for criminal acts**… .' *Graham v. James F. Jackson Associates, Inc.*, 84 N.C. App. 427, 432, 352 S.E.2d 878, 881 (1987)." Appellees' Br. at 40-41 (emphasis added).

13

Further, Appellees state, "Similarly, Defendants' reliance on the dicta in *Lewis* (Br. at 28, 38) does nothing more than to suggest that the rule in North Carolina would be that a provision in **an indemnity agreement relieving a defendant from liability for its intentional torts would be void against public policy**. *Lewis v. Dunn Leasing Corp.*, 36 N.C. App. 556, 560, 244 S.E.2d 706, 709 (1978)." Appellees' Br. at 41 (emphasis added).

The Business Conspiracy Claim is statutory, but even if it were a tort claim, the Indemnity Agreement would be invalid.

II.     **The District Court applied the wrong test of the reasonableness of settlement and failed to consider the likelihood of success of the suit.**

The District Court failed to apply the proper test to determine whether the Settlement Agreement was "fair and reasonable" and in "good faith." *See* Opening Br. at 30. The District Court stated the presence of "potential liability" was enough to have an indemnity agreement attached to any settlement agreement. JA684-690.

The District Court only considered the amount of the settlement, not the risk of exposure. The Court should have considered "the *probable* amount of the judgment if the original plaintiff where to prevail at trial, balanced against the *possibility* the original defendant would have prevailed." *Valloric v. Dravo Corp.*, 178 W. Va. 14, 21, 178 S.E.2d 207 (1987) (*Valloric* being cited in *Bank of Am. Merch. Servs., LLC. v. Arby's Rest. Grp. Inc.*, 2021 NCBC LEXIS 61 at *23 (justifying the Court's public policy preferring settlement to litigation)). North Carolina law in this area is not well developed. But *Valloric's* test is the correct one; it has been cited in North Carolina. *Id.* "North Carolina follows the traditional common-law rule that indemnity does not cover losses for which the indemnitee is not liable to a

third party, and which he improperly pays." *Banc of Am. March. Servs., LLC.*
*v. Arby's Rest. Grp., Inc*., 2021 NCBC LEXIS 61 *22.

Front Row and Jenkins are silent as to whether this test properly
applied North Carolina law. They try to use a clearly erroneous standard for
whether the District Court used the correct legal test. *See* Response, Br. at 44.
This question of whether the District Court applied the right legal test, is
reviewed *de novo. Baturin v. Comm'r*, 31 F.4th 170 (4th Cir. 2022)("…the
Fourth Circuit reviews factual findings for clear error, legal questions de
novo, and mixed questions of law and fact de novo."). The District Court
applied the wrong test. It should have considered the "risk of exposure" test
set out in *Valloric*.

### A.     The Trial Court chose not to review the merits of the Virginia case by treating it as "re-litigation."

The District Court's decision Devine and DiSeveria cannot "relitigate
the Virginia Lawsuit" led to the District Court overlooking risk of loss.  The
District Court short-circuited its analysis by refusing to consider evidence
and argument that bears directly on reasonableness.  JA183, JA677.  If Front
Row settled a claim (in particular, the Bank's assertion of a right to seize

CMA 33 and sell it to the highest bidder) that they knew or should have known had no reasonable prospect of success, the settlement was not reasonable. The District Court erred by placing the question of reasonableness off-limits. JA183.

If the District Court had considered all the relevant evidence, the appellees might have been correct that the applicable standard is "clearly erroneous." However, expressly declining to consider a critical factor is an abuse of discretion. *See United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018). That is what the District Court did here.

The District Court erred when it chose not to consider *any* of the merits of the Virginia Action in its decision:

> Applying these legal principles to the records here, the Court finds that there are genuine issues of material fact as to the reasonableness of the underlying settlement. Without forecasting any outcome, the Court will resolve these factual issues, including arguments and defenses as to whether the settlement was reasonable […] **The parties are cautioned, however, that the Court will not permit the parties to litigate the underlying [Virginia] Action** […] (emphasis added).
> *See* JA192; and

> **The Court will not re-litigate issues in the underlying Bank's lawsuit** as those issues are not before this Court. The Court also

need not reason a conclusion on actual liability because, under
North Carolina law, only a conclusion of potential liability is
necessary. (emphasis added).
*See* JA686.

Having a case-within-a-case is not necessary. Instead, the District

Court should have considered the risk of exposure in the Virginia Action.

"[T]he fact that the claim may have been successfully defended […] us but

apart of the reasonableness analysis,and therefore is subject to proof."

*Valloric*, 178 W. Va. at 21, 357 S.E.2d at 214 (citing *Moses-Ecco. Co. v. Board of*

*Transp.*, 320 F.2d 685, 115 U.S. App. D.C. 360 (D.C. Cir. 1963)).

North Carolina courts have acknowledged circumstances where the

risk in litigating is "well-taken". *See Pa. Nat'l Mut. Cas. Ins. Co. v. Associated*

*Scaffolders & Equip. Co.*, 157 N.C. App. 555, 559-560, 579 S.E.2d 404, 407-8

(N.C. App. 2003). Such is the case here. The District Court never analyzed

whether the Appellants' case was "well-taken", as such an enterprise would

require a review of the Virginia Action. *See generally*, JA658-691. This review

is necessary for the Court to determine "the possibility the Defendants

would have prevailed." *Valloric*, 178 W. Va. at 21.

**B.      The Settlement Agreement was unreasonable because it did not consider the risk of exposure.**

Jenkins and Front Row commit to the "risk of exposure" test by stating the Trial Court found the risk was substantial and not clearly erroneous. *See* Response Br. at 45-47.  They argue the amount settled for, $2.1 million, being significantly less than the Bank's claim for $12,112,307.49, is evidence of the Settlement Agreement's reasonableness. *Id*. at 45. This is not so. The Settlement Agreement's low figure, relative to the Bank's prayer for damages, is evidence of a lower probability of the Bank prevailing and a higher chance of the Defendants prevailing.

███████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████ There is no explanation for this discrepancy other than the majority of the Bank's claims were unfounded and not likely to succeed at trial. The discrepancy

between the $12,112,307.49 requested by the Bank and the small amount settled for indicates the willingness to accept *any* amount. The idea that the Bank wanted to have the lien on CMA 33 released, █████████████████ ████████████████████, is unfounded.

The Appellees have cited several occasions where the Appellants have offered settlement. *See* Response Br. at 47; *see also* JA685-686, JA689. This is not proof the Settlement Agreement was reasonable. The Trial Court found the Appellants offered settlement for much less than what was eventually agreed to. JA680.

Robert Jenkins and Front Row argue the Settlement Agreement was reasonable by the District Court, stating "the Defendants were given multiple opportunities, before and throughout the Virginia [Action], to participate in the defense and in the settlement negotiations, yet the Defendants consistently refused." *See* Response Br. at 44.

The Appellants did choose to participate in the defense. The Appellants were parties to the Virginia Action, ████████████████ ████████████████████████████████████████████████

20

████████████████████████████████████████████ They chose

to participate, ████████████████████████, and filed briefs in

defense of the Bank's claims. *See* JA1004-1007 ████████████████

████████████████████████████████████████████████

████████████████████████████ This shows good faith. *See in*

*Kirkpatrick & Associates Inc., v. Wickles Corp.*, 53 N.C. App. 306, 311, 280 S.E.2d

632, 636 (1981). The timing of the Devine and DiSeveria's attempt to defeat

the Bank's claims was cut short by Front Row and Jenkins's settlement

without the Devine and DiSeveria's participation.

The merits of the Front Row and Jenkins' defense were never tested by

the Virginia Court. Front Row and Jenkins were contented to settle the

Bank's claims by wielding the "blank check" it now proports to have under

the Indemnity Agreement. This is bad faith on the part of the Front Row and

Jenkins, who gave little to no credence to the Appellants' defenses or

attempts at defending against the Bank's claim to CMA 33.

**C.    The District Court struck the wrong balance of incentive to settle and the right of Devine and DiSeveria to have their day in court.**

Front Row and Jenkins state Devine and DiSeveria's rights to Due Process were not violated when they were held accountable for the Settlement Agreement.  Front Row and Jenkins quote the District Court, "(1) Defendants had adequate notice of the Bank's claims and Plaintiffs' demands that Defendants indemnify them under the Indemnity Agreement; and (2) Defendants had a right to be heard." *See* Response Br. at 44; JA684.

Devine and DiSeveria were not afforded their right to be heard at trial. Adequate notice of indemnification does not satisfy their due process rights. *State v. Joyer*, 284 N.C. App. 681 (2022) ("[t]he touchstone of due process is the presence of fundamental fairness in any judicial proceedings adversely affecting the interests of an individual. When determining whether defendant's due process rights were violated, an appellate court applies a *de novo* standard of review applies.").

The Appellants filed a Partial Motion for Summary Judgment two days before the execution of the Settlement Agreement. On that matter alone,

Devine and DiSeveria did not have an opportunity to be heard. This Court has recognized "the Due Process Clause of the Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property, without due process of law" *Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023) (citing U.S. Const. XIV, §1).

The property being deprived in this case is the money claimed under the Indemnity Agreement by the Appellees. The District Court should have considered whether DiSeveria and Devine's motion for summary judgment was well-founded.



Even under the potential liability standard, the appellees advocate the absence of any exposure on the primary claim being settled is highly relevant to the determination of reasonableness.

The appellees certainly *used* to think the UCC Defense, or at least a rudimentary form of it, was relevant.  In sworn interrogatory responses in the Virginia Litigation, Front Row wrote:



████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ The UCC Defense was not only relevant, but crucial to the

key issue confronting the District Court.

Turning to the merits of the UCC question, the appellees complain

Devine and DiSeveria "fail[] to identify a single case that actually applied

their purported UCC Defense".  Appellees' Br. 51.  This is hardly surprising,

████████████████████████████████████████████

████████████████████████████ However, rather than meeting

the statutory argument head-on, Front Row and Jenkins construct and

dismantle a straw man.

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

████████████     As a threshold question, attachment requires only that a debtor have rights in collateral, that it sign a security agreement, and that the secured party give value. *See* Va. Code § 8.9A-203(b). These are the basic prerequisites for the creation of a security interest. *See id.* § 8.9A-203, cmt. 2. Yet what § 9-203 gives, § 9-408 can—and in this case, does—take away.

The intricacies of § 9-408 were discussed in more detail in the opening brief and need not be repeated here. It does, however, bear emphasizing that the strictures imposed by § 9-408(d) are the heart of the matter, to which the Appellees offer no meaningful response. A security interest in a general intangible, ██████████████, *though properly created*,

> (1)   is not enforceable against … the account debtor [*i.e.*, NASCAR];
>
> (2)   does not impose a duty or obligation on … the account debtor;
>
> ***
>
> (4)   does not entitle the secured party to use or assign the debtor's rights under the … general intangible …;
>
> *** and

(6)     does not entitle the secured party to enforce the
security interest in the … general intangible.

Va. Code § 8.9A-408(d).

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████ The

District Court's failure to take this fact into account was reversible error.

## Conclusion

For the reasons set forth above, the decision of the District Court

should be reversed.

/s/ *Anthony Roelof Coppola*
Anthony Roelof Coppola
Patrick Robert Corish
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 296-0549

Trevor Reid
Meredith L. Yoder
PARKER, POLLARD,WILTON & PEADON, PC
6802 Paragon Place, Suite 205
Richmond, Virginia 23230
(804) 262-3600
*Counsel for Appellants*

## Certificate Of Compliance

1.    This document complies with type-volume limits because, excluding

the parts of the document exempted by Fed. R. App. P. 32(f) (cover

page, disclosure statement, table of contents, table of citations,

statement regarding oral argument, signature block, certificates of

counsel, addendum, attachments):

This document contains 5,064 words.

2.    This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface
using Microsoft Word in 14 point Palatino Linotype.

/s/ Anthony Roelof Coppola
Anthony Roelof Coppola
Patrick Robert Corish
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 296-0549

Trevor Reid
Meredith L. Yoder
PARKER, POLLARD, WILTON & PEADON, PC
6802 Paragon Place, Suite 205
Richmond, Virginia 23230
(804) 262-3600

*Counsel for Appellants*

29

### Certificate of Filing and Service

I hereby certify that, on December 23, 2024, I have electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all counsel of record.

I further certify that on this same day, the foregoing will be distributed via email to the Counsel below, as agreed upon:

Daniel Stephen Trimmer
SKUFCA LAW PLLC
1514 South Church Street, Suite 101
Charlotte, North Carolina 28203
(704) 376-3030
dan@skufcalaw.com

*Counsel for Appellees*

/s/ *Anthony Roelof Coppola*
Anthony Roelof Coppola

*Counsel for Appellants*